IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:23mj175 |
| | : | |
| JUSIAH HERBERT, also known as "Loko" and "Lokkoo BeenHounding" | : | |

MOTION AND MEMORANDUM BY THE UNITED STATES FOR DETENTION

NOW COMES the United States of America and hereby moves for a detention hearing pursuant to 18 U.S.C. § 3142(f) to determine whether any condition or combination of conditions will reasonably assure the appearance of defendant as required and the safety of other persons and of the community. For the reasons discussed in this memorandum, the Government requests that the defendant be detained pending trial.

I. Background

Based upon a long-term investigation conducted by the Department of Homeland Security Investigations and the Suffolk County Police Department, which involved interviews with multiple cooperating witnesses, reviews of seized electronic communications and social media postings and seizure of at least ten firearms and quantities of cocaine, cocaine base, fentanyl and heroin, the defendant, a leader of the Bloodhound Brims ("BHB") street gang, was charged, in the above-captioned 22-count indictment, along with other BHB

members, with racketeering, attempted murders in aid of racketeering, assaults and attempted assaults in aid of racketeering, possessing, brandishing and discharging firearms in furtherance of violent crimes and narcotics possession and distribution.

In summary, the investigation revealed that the defendant was the leader of a set of the BHB that operated in Suffolk County, New York. In electronic messages, the defendant coordinated BHB meetings at which members paid dues to advance BHB's criminal activities, including narcotics trafficking and the use of firearms. In addition, electronic communications showed that the defendant coordinated the transportation of firearms from Alabama to Suffolk County for use in BHB's criminal activities. Overall, under the defendant's direction, BHB was responsible for trafficking more than 500 grams of cocaine, more than 100 grams of heroin and more than 40 grams of fentanyl on Long Island.

Between August 2020 and September 2021, the defendant ordered BHB members, including co-defendants Brandon Hicks and Janelle Johnson, to engage in shootings of rival gang members that occurred in Brentwood, Central Islip, West Babylon and Bay Shore, New York. These shootings, which occurred on August 16, 2020, August 25, 2020, October 15, 2020 and September 15, 2021, resulted in four victims suffering gunshot wound injuries. In the September 15, 2021 shooting, the defendant and other BHB members fired

multiple rounds at individuals, whom they believed were rival gang members. At the time of the September 15, 2021 shooting, the defendant was serving a five-year term of probation based upon his conviction for selling a quantity of heroin in Nassau County, New York.

The investigation has revealed that the defendant's leadership of the BHB is ongoing. Indeed, within approximately the last six weeks, law enforcement obtained communications in which the defendant sought information about the whereabouts of a rival gang member and in which the defendant stated, in substance, that he wanted to locate, assault and rob that rival gang member. At the time of these communications, the defendant was serving still serving his five-year probationary term in North Carolina.

Furthermore, a review of the defendant's publicly-available Instagram account (the "Instagram Account") showed images contained in postings—some of which were dated within approximately the last two weeks—that depicted the defendant in close proximity to what appeared to be firearms and a large amount of United States currency. Some of these images were accompanied by text, which related to the BHB. For example, the below post appeared on the Instagram Account on or about April 5, 2023.



Based upon a review by a law enforcement officer familiar with the defendant, the individual depicted in the above photographs in close proximity to what appears to be a firearm is the defendant. In addition, the term "Afghan" is BHB slang for the portions of Long Island where BHB operates and "WHOOPTY," is a greeting that BHB members use to signify their allegiance to BHB.

In another, example, on or about February 19, 2023, the Instagram Account depicted an individual whom a law enforcement officer familiar with the defendant believes to be the defendant making a BHB gang sign with his hand.



In addition, the term "sitxhyhound," in the above-posting includes the term "hound," which is a slang reference to a BHB member. And the term "Afghan Sniper," refers to members of the BHB who conduct shootings on Long Island.

In a final example, an October 28, 2022 posting on the Instagram Account depicted an individual whom a law enforcement officer familiar with the defendant believes to be the defendant holding what appears to be a large quantity of United States currency while in possession of what appears to be a firearm. The posting also contains a blood drop emoji, which is a reference to BHB, a set of the Bloods street gang.



A review of the defendant's record of arrest and prosecutions shows that he is a Criminal History Category II based upon his July 22, 2021 sentence of five-years' probation for Criminal Sale of a Controlled Substance in the Third Degree. As such, he is facing a mandatory-minimum term of forty years' imprisonment and a Sentencing Guidelines range of 262-327 months' imprisonment based upon the charges set forth in the Indictment.

II. Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e). The statute "provides that there is a rebuttable presumption that 'no condition or combination of conditions will

reasonably assure'" against flight or danger where probable cause supports a finding that the person seeking bail committed certain types of offenses, including—as applicable here—"an offense under Title 18, United States Code] section 924(c)" or "'an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.).'" See United States v. English, 629 F.3d 311, 319 (2d Cir. 2011) (quoting 18 U.S.C. § 3142(e)(3)(A)). "An indictment returned by a duly constituted grand jury conclusively establishes the existence of probable cause for the purpose of triggering the rebuttable presumptions set forth in § 3142(e)." See id. (quoting United States v. Contreras, 776 F.2d 51, 55 (2d Cir.1985) (internal alteration and quotation marks omitted)).

The Bail Reform Act lists four factors to be considered in the detention analysis, whether for risk of flight or dangerousness: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in

7

Case 1:23-mj-00175-JEP    Document 1    Filed 04/19/23    Page 7 of 12

criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

The Government must support a finding of dangerousness by clear and convincing evidence, see United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), and a finding of risk of flight by a preponderance of the evidence, see United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); see also United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004). Under the Bail Reform Act, the government may proceed by proffer, United States v. Ferranti, 66 F.3d 540, 541 (2d Cir. 1995); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (explaining that the government is entitled to proceed by proffer in a detention hearing); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986), (same). Furthermore, "[t]he rules of evidence do not apply in a detention hearing." Ferranti, 66 F.3d at 542; see also United States v. Agnello, 101 F. Supp. 2d 108, 110 (E.D.N.Y. 2000) ("[E]vidence may be supplied through proffers and hearsay information, and the rules of evidence do not apply.").

### III. The Defendant Should Be Detained

#### A. The Defendant is a Danger to the Community

A long-term investigation revealed that the defendant is the leader of the Suffolk County set of BHB, a violent street gang. At the defendant's direction, BHB members engaged in four shootings that resulted in injuries to several victims and the gang sold controlled substances—including potentially deadly

8

fentanyl—to finance their illegal activities, which further damaged the community. As a result of these offenses, the defendant is facing multiple Section 924(c) charges as well as controlled substances charges that trigger the statutory presumption that he is both a danger to the community and a flight risk.

In addition, the defendant personally participated in a gang-related shooting in September 2021—about two months after he was sentenced to five-years' probation following his conviction for selling heroin—and seized electronic communications showed that he trafficked firearms from Alabama to Suffolk County for use in BHB activities. Moreover, the defendant recently engaged in communications seeking information about a rival gang member to perpetrate a robbery and assault and recent postings on the defendant's Instagram page showed him in possession of what appear to be firearms and engaging in communications related to BHB gang activity. These communications and postings occurred while the defendant was serving a probationary term in North Carolina, which prohibited him engaging in criminal conduct.

Thus, in light of the defendant's leadership of a violent street gang, his demonstrated disregard for public safety, his record of recidivism, violation of probation, use of dangerous firearms and the presumption in favor of detention

that applies here, the Court should conclude that the only proper course is to order the defendant's detention pending trial.

B. <u>The Defendant Is a Risk of Flight</u>

The defendant also poses a substantial flight risk. First, the weight of the evidence against the defendant is overwhelming. Numerous cooperating witnesses and seized electronic communications from the defendant's social media accounts and other sources demonstrate that he is a BHB leader who ordered multiple attempted murders and assaults in furtherance of racketeering activities that are charged in the Indictment. The proof against the defendant also includes numerous seized firearms and quantities of fentanyl, heroin, cocaine and cocaine base. Such insurmountable proof, provides the defendant, as courts have repeatedly recognized, with a "considerable additional incentive to flee." <u>United States v. Millan</u>, 4 F.3d 1038, 1046 (2d Cir. 1993); <u>see also United States v. Palmer-Contreras</u>, 835 F.2d 15, 18 (1st Cir. 1987) (<u>per curiam</u>) (where "the evidence against defendants is strong, the incentive for relocation is increased").

Finally, the defendant is facing a potential of more than sixty years' imprisonment with a mandatory minimum term of forty years' imprisonment based upon the charges in the Indictment, which creates a substantial incentive for him to flee. The possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. <u>See United States v.</u>

Jackson, 823 F.2d 4, 7 (2d Cir. 1987); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight,"); United States v. Dodge, 846 F. Supp. 181, 18485 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight). Moreover, based upon the defendant's Criminal History Category of II, his estimated sentencing guidelines range is 262-327 months' imprisonment. This provides him with an even greater incentive to flee. And the risk of flight is heightened in this case because the defendant's case will be tried in Central Islip, New York, far from the area in North Carolina where he has been recently residing and where he has significant ties.

WHEREFORE, the United States respectfully requests that the Court

For the reasons set forth above, the Court should enter a Permanent Order of Detention against the defendant.

This, the 19th day of April, 2023.

                    SANDRA J. HAIRSTON
                    United States Attorney

                    Nicole R. DuPré
                    Assistant United States Attorney
                    NC Bar No. 41214
                    251 N. Main Street, Suite 726
                    Winston-Salem, NC 27101
                    Phone: 336-333-5351